McCORD, Judge.
Appellant appeals his conviction of robbery. He and codefendants Mains and Johnson were charged with robbery of a drug store and on the morning of the trial, Mains and Johnson pleaded guilty. The only evidence tying appellant to the crime was the testimony of a witness that appellant was the driver of the get-away car. Statements of this witness prior to trial did not implicate appellant and were in a number of respects inconsistent with her testimony.
At the trial, appellant took the stand in his own defense and in addition called Mains as a witness. He asked Mains a series of questions, some of which were for the purpose of attempting to show the jury that Mains would be a willing witness but could not testify because of a plea bargain agreement entered into between him, his attorney, Robert E. Tanner, Jr., co-defendant Johnson and his attorney, Gary C. Pajcic, the assistant state attorney, Julian F. Broome, Jr., and approved by the trial judge. This plea bargain agreement was stated on the record and appears in the transcript as follows:
“MR. PAJCIC: My name is Gary Pajcic. I represent James Johnson who is charged with robbery;.
He is going to enter a plea for IS years in the State prison per negotiations, and the negotiations are that he will not testify either for or against Mr. Lawley or for or against the State, and if subpoenaed to testify he has informed me he would be inclined to take the Fifth Amendment because any further testimony may lead to additional crimes being charged against him as a result of any testimony he may give.
THE COURT: All right.
MR. TANNER: I’m Robert E. Tanner, Jr-
I represent Charles Hobart Mains.
Mr. Mains will enter a plea of guilty as charged pursuant to negotiations with the State for a IS year sentence.
MR. BROOME: Recommendation.
MR. TANNER: As part of this plea and negotiation Mr. Mains states that he will not testify for or against Mr. Lawley, the co-defendant.
This term of years is part of the negotiation based solely upon this additional negotiation.
THE COURT: All right.
Let me make it very clear if either one of these gentlemen testify in the trial against Lawley—
MR. BROOME: Ór for Mr. Lawley.
THE COURT: For Mr. Lawley or against Mr. Lawley, then the Court is not limited in the sentence that it will mete *786 out to these two individuals, Mr. Mains and Mr. Johnson.
Now, the thing that occurs to the Court, however, is suppose he is subpoenaed and he has waived his right not to testify.
MR. PAJCIC: Your Honor, Mr. Johnson could be charged with assault to murder and possession of a firearm by a convicted felon, as could these other individuals, and it would effect their — they would have to take the Fifth.
THE COURT: That’s what I want to find out; if there is another charge.
MR. BROOME: The State would submit it could file additional charges against all three of assault to murder and other charges.
The State would feel like if they plead guilty and have been sentenced, they are still charges that could be brought, and, if not, their cases have not been finalized and I think certainly they would have a right not to testify and get involved if more charges could be brought against them, and I think they could be and it wouldn’t be double joepardy.
MR. PAJCIC: All are convicted felons.
THE COURT: The only thing I was concerned with is suppose Mr. Edwards subpoenas them and announces he wants to inquire only into the robbery, or his client’s involvement in the robbery.
MR. BROOME: Well, the assault to murder came out of the robbery.
THE COURT: Then they would be entitled to claim the Fifth.
MR. BROOME: Yes, sir.
THE COURT: Okay.
Is that the agreement?
MR. PAJCIC: Yes sir.
MR. TANNER: Yes sir.
THE COURT: All right.
One at a time.
Is there anything you want to say?
MR. EDWARDS: Yes Your Honor.
Fifteen minutes ago I learned that the pleas would be entered by Mr. Johnson and Mr. Mains and it is my intention at this late hour to subpoena both of them, to call them as witnesses on behalf of Lawley.
I would object to any pressures by the State on the defendants not to testify on behalf of my client due to the fact of subjecting them to additional penalties.
Both of them have a 15 year sentence that has been worked out for them.
As soon as we can get a break I will issue subpoenas for the two gentlemen in question, Mr. Mains and Mr. Johnson.
THE COURT: As I understand it, Mr. Edwards, part of the negotiations for these two individuals included they would not testify.
Is that right?
MR. BROOME: Yes, Your Honor.
MR. EDWARDS: I believe it’s an illegal subject to negotiate because it’s jeopardizing witnesses for my client.
MR. BROOME: Let me say this:
I think if they did, based on what the State has, if they did take the stand and testify for Lawley, if Lawley put pressure on them to testify that he didn’t have anything to do with the robbery, I think they would be subjecting themselves to possible perjury, and it would be the advice of their attorneys, I think, not to testify one way or the other because of possible subjection to a perjury charge which would be filed by the State, even though they did plead guilty in this case.
MR. BROOME: Your Honor, as far as the negotiations the State has made with the attorneys, including Mr. Tanner, the *787 attorney for Mr. Mains, the recommendation of the State is on Mr. Mains’ plea of guilty the State would be prepared to recommend a sentence of IS years in the State prison.
It is further negotiated between Mr. Tanner and the State that in the event that the co-defendant, Mr. Lawley, goes to trial and as a defendant subpoenas Mr. Mains as a witness for Mr. Lawley, it is understood by the State that Mr. Tanner will, and also Mr. Mains will, invoke the Fifth Amendment, that is, not to testify, because I have informed Mr. Tanner that Mr. Mains and Mr. Johnson are still subject to further charges by the State, to-wit: Assault to murder, the victim being the police officer, and the State would not file anymore charges against Mr. Mains or Mr. Johnson if they took the Fifth or didn’t testify one way or the other.
MR. BROOME: Your Honor, additionally the State could charge — legally charge Mr. Mains, who I believe has a prior felony conviction, with possession of a firearm by a convicted felon, in addition to the robbery which carries 15 years, and the State would not file this on Mr. Mains.
MR. TANNER: It’s my understanding part of the negotiations are that Mr. Mains will not testify for or against Mr. Lawley; that he will take the Fifth in the event that he is subpoenaed in any trial that may involve Mr. Lawley, and it is also my understanding this is part of the negotiations.
THE COURT: You have advised your client to testify would subject him to additional charges by the State, and, therefore, he would be entitled to claim the Fifth Amendment?
MR. TANNER: Yes, sir, Your Honor.
MR. BROOME: Your Honor, the basic negotiations between myself and Mr. Pajcic are essentially this: Based upon his plea of guilty as to the information of robbery the State would be prepared to recommend a sentence of 15 years in the State penitentiary.
It is further negotiated between myself and Mr. Pajcic that in view of the fact that the State could under the facts file an information on Mr. Johnson for assault to murder, even though-he says he didn’t shoot at him, but the State has testimony to the contrary, and based upon this other contrary information the State could legally file an information against Mr. Johnson for assault to murder, and also, I' believe, he is a convicted felon, and the State could file an information on him for possession of a firearm by a convicted felony, the State will not do this based upon the negotiations and his plea of guilty.
However, I have informed Mr. Pajcic if in the event he, Mr. Johnson, is subpoenaed by Mr. Lawley, if Mr. Lawley, goes to trial, as a witness, that if — Mr. Pajcic would inform his client to take the Fifth Amendment, and I believe he has agreed to do that, because if he does give testimony the State could and probably would file an additional charge of assault to murder and possession of a firearm by a convicted felon, even though he had plead guilty to robbery, and those are two different crimes and he could be prosecuted as such, and I have been informed by Mr. Pajcic he essentially would not testify'for Mr. Lawley based upon his possible subjection to new charges.
MR. PAJCIC: Your Honor, what Mr. Broome says is correct, and he will plead the Fifth Amendment if he is subpoenaed to testify because there is a possibility of incrimination as to possession of a firearm by a convicted felon and assault to murder, and he would be forced to take the Fifth Amendment and I would advise him to do that.
THE COURT: I want to make it clear that the sentence part of the negotiation, *788 if there is a violation of the agreement between the State and the defendant’s counsel, then the court will not be bound by any sentencing limitation placed on it by the negotiations.”
In a nutshell, by the above plea bargain agreement approved by the court, the state agreed to let the co-defendants plead guilty and receive a IS year sentence, provided that after pleading guilty they would invoke the Fifth Amendment to the U. S. Constitution and not testify in appellant’s case.[1] In addition the state agreed that if the co-defendants lived up to the agreement, the state would not prosecute them on other crimes. Also, the trial judge told them that he would not be bound by the 15 year sentence if they testified in appellant’s case.
In his defense, appellant called co-defendant Mains to the stand and asked him a series of questions, the answers to some of which would have tended to incriminate him and others of which would not. He was not allowed to answer any questions.
At the initial announcement of the plea bargain, appellant’s attorney, as above quoted stated:
“I believe it’s an illegal subject to negotiate because its jeopardizing witnesses for my client.”
He was correct. The public policy of this state as set forth in § 918.14, Florida Statutes 1973, provides in part as follows:
“(1) It is unlawful for any person, knowing that an official proceeding or investigation by a duly constituted prosecuting authority is pending, to endeavor or attempt to induce or otherwise cause a witness to:
* * *
(b) Withhold any testimony, information, document, or thing.
(2) If any person violates the provisions of this section by the use of force, deception, threat, or offer of pecuniary benefit to induce any conduct described in subsection (1), the violation shall constitute a felony of the third degree, punishable as provided in § 775.082, § 775.083, or § 775.084. In all other cases, a violation shall constitute a misdemeanor of the first degree, punishable as provided in § 775.082 or § 775.083.”
To suppress testimony is an improper condition of a plea bargain. Witnesses have a right to either invoke or not invoke the Fifth Amendment. It is a right that is personal to the witness and may be waived by him. For the state to coerce a witness to invoke his Fifth Amendment right and not give testimony which may be exculpatory of another defendant under the threat of the court imposing a greater sentence in a case pending against him or under the threat of prosecution of the witness for other crimes amounts to suppression of evidence by the state. Also, under § 914.04, Florida Statutes, the state can grant immunity to compel a witness to give testimony that would incriminate him, but it prostitutes justice for the state, by a plea bargain agreement, to promise a witness immunity from prosecutions on condition that he not testify in a case.
We of course, have no way of knowing whether the co-defendants would have given, or would in the future give, exculpatory testimony in appellant’s behalf had they not been coerced by the plea bargain agreement not to do so. Thus, this is not error for which this case can be remanded for a new trial as the improper plea bargain which the state has made with the two *789 co-defendants and which the trial judge approved would infect a new trial to the same degree that it has infected this one.
Reversed with directions that appellant be discharged.
BOYER, C. J., and RAWLS, J., concur.

. The parties have not raised any question here as to whether or not a guilty plea waives the privilege against self-incrimination. We have neither found nor been cited any Florida authority on this point and authority is divided elsewhere. See Annotation, 9 A.L.R. 3rd 990. It is not necessary that such question be resolved in this case.